UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

<table>
<tr><td>

JASON LESLIE and EDUARDO CAJINA, individually, and as representatives of a Class of Participants and Beneficiaries of the Meadowvale, Inc. Amended and Restated Employee Stock Ownership Plan,

Plaintiffs,

v.

MEADOWVALE, INC., ESOP COMMITTEE OF MEADOWVALE, INC., JOSEPH G. GOMOLL, STEVEN P. STEINWART, and QHI, LLC,

Defendants.

</td><td>

Case No.: 1:25-14040

</td></tr>
</table>

---

**CLASS ACTION COMPLAINT**

---

Plaintiffs Jason Leslie and Eduardo Cajina ("Plaintiffs"), individually and as representatives of a Class of Participants and Beneficiaries of the Meadowvale, Inc. Amended and Restated Employee Stock Ownership Plan ("Meadowvale ESOP" or "Plan"), by their counsel, WALCHESKE & LUZI, LLC, and DEBOFSKY LAW LTD., allege and assert to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the following:

**INTRODUCTION**

1. This class action involves participants and beneficiaries of the Meadowvale ESOP, who are challenging the fiduciaries and parties-in-interest of the Meadowvale ESOP who provided special Meadowvale ESOP distribution treatment for Meadowvale's current Chairman of Board and former President, Stevem P. Steinwart, by excluding QHI, LLC assets from the

1

Meadowvale ESOP, and by jeopardizing the Meadowvale ESOP's qualification status by violating top-heavy and non-discrimination rules.

2. In undertaking these actions, Defendants Meadowvale Inc. ("Meadowvale"), the ESOP Committee of Meadowvale, Inc. ("ESOP Plan Committee"), Joseph G. Gomoll, individually and in his capacity as the chair of ESOP Plan Committee, Steven P. Steinwart, and QHI, LLC, (collectively, "Defendants"), did not act exclusively and prudently in the best interest of the Meadowvale ESOP's participants and beneficiaries, as required under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"), and thereby breached their fiduciary duties of loyalty and prudence, and engaged in both party-in-interest and fiduciary prohibited transactions, which cause substantial loss in retirement benefits to Plaintiffs and Class members.

3. Although the Meadowvale ESOP was established to provide Meadowvale employees with company stock representing their beneficial ownership interest in Meadowvale and as a means of providing employees with a retirement benefit, the Meadowvale ESOP has been operated and managed by Defendants to primarily enrich a few company insiders, including Mr. Gomoll and Mr. Steinwart.

4. In order to further this unlawful scheme, Defendants enacted Plan Amendment Seven to the Meadowvale ESOP on August 30, 2024, for the sole purpose of retroactively providing Mr. Steinwart with the ability to receive a one-time lump sum payment from the Meadowvale ESOP, while almost all other employees, including long-time employees Mr. Leslie and Mr. Cajina, were forced to undertake the risk associated with having their ESOP distributions incrementally paid out over five to ten years.

5. Additionally, in a pact to undervalue the Meadowvale ESOP shares and to further enrich themselves, Defendants Gomoll and Steinwart failed to publicly disclose the existence of a Meadowvale-owned holding company, QHI, which they operated out of Meadowvale and to which they caused Meadowvale to pay above-market rents to QHI, which diminished the value of the Meadowvale ESOP shares of the Plan participants.

2

6. Meadowvale ESOP's tax-qualified status is also in jeopardy, risking substantial tax penalties for Mr. Leslie, Mr. Cajina, and other Plan participants because the structure under which Plan currently operates violates Internal Revenue Code ("IRC") top heavy and non-discrimination rules involving highly compensated employees ("HCEs")/key employees and non-highly-compensated employees ("NHCEs")/non-key employees. Running the Meadowvale ESOP in violation of such top heavy and nondiscrimination principles is a breach of Defendants' fiduciary duty of prudence.

7. As set out in the detailed allegations below, Defendants' actions with regard to discriminatory lump-sum distributions from the Meadowvale ESOP, the undisclosed real estate deals between Meadowvale and QHI that devalued the shares of the ESOP, and the risk of substantial tax penalties based on the top heavy and discriminatory nature of the Plan, all violate Defendants' fiduciary duties of loyalty and prudence to operate the Meadowvale ESOP in the sole interest of the Meadowvale ESOP participants in a prudent manner, and also amount to party-in-interest and fiduciary prohibited transactions with Plan assets to enrich Mr. Gomoll and Mr. Steinwart.

8. As the primary plan administrator of the Meadowvale ESOP, Mr. Gomoll and the ESOP Plan Committee had a fiduciary obligation to the Plan's participants and beneficiaries, characterized as the highest known to law, to fairly administer the Meadowvale ESOP for the exclusive benefit of all the Plan's participants and beneficiaries in a prudent manner, and not to engage in prohibited transactions with Plan assets that amounted to self-dealing for Mr. Gomoll's and Mr. Steinwart's benefit.

9. Plaintiffs and Class members suffered grievous financial harm to their retirement benefits under the Meadowvale ESOP as a result of Defendants' misconduct with regard to their operation and management of the Meadowvale ESOP.

10. Mr. Leslie and Mr. Cajina both have fully exhausted their administrative claims of fiduciary and prohibited transactions against Defendants and their claims are now ripe for litigation.

3

11. Plaintiffs, on behalf of the Meadowvale ESOP, seek appropriate equitable relief in the form of reformation, estoppel, surcharge, and restitution, under ERISA §§ 404(a)(1)(A), (B), 406(a)(1)(D), 406(b), 29 U.S.C. §§ 1104(a)(1)(A), (B), 1106(a)(1)(D), 1106(b), pursuant to ERISA Sections 409, 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1109, 1132(a)(2) and 1132(a)(3).

12. Plaintiffs thus bring this class action on behalf of all similarly situated Meadowvale ESOP participants and beneficiaries to finally to put an end to this unlawful scheme that Defendants have engaged in to primarily enrich themselves through the Meadowvale ESOP at the expense of the other Plan participants and beneficiaries.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this suit arises under the laws of the United States, pursuant to 29 U.S.C. §1132(e)(1), which provide for federal jurisdiction of actions brought under Title I of ERISA.

14. This Court has personal jurisdiction over Defendants because Defendants transact business in and have significant contacts with this District, and because ERISA provides for nationwide service of process pursuant to ERISA § 502(e), 29 U.S.C. § 1132(e)(2).

15. Venue is proper in this District pursuant to ERISA § 502(e), 29 U.S.C. § 1132(e)(2), and 28 U.S.C. § 1391(b) and (c), because a substantial part of the events or omissions giving rise to the claims occurred in this District, and the Defendants may be found in this District.

## PARTIES AND THE PLAN

16. Plaintiff Jason Leslie is a resident of the State of Missouri, who was employed by Meadowvale, Inc. from May 18, 1993, to June 26, 2024, last as a Vice President, and has been a "participant" in the Meadowvale ESOP under 29 U.S.C. § 1002(7) since April 1, 1997.

17. Mr. Leslie devoted thirty-one years of service to Meadowvale and was instrumental in growing the company from a modest operation to an enterprise generating over $100 million in annual revenue.

18. Mr. Leslie's ESOP account is fully vested, and he is eligible to receive distributions from the Meadowvale ESOP as of the 2025 Plan Year.

19. Plaintiff Eduardo Cajina is a resident of the State of Illinois, who was employed by Meadowvale, Inc. from September 29, 2003, to November 1, 2024, last as the Senior Vice President of Sales and Marketing, and has been "participant" in the Meadowvale ESOP under 29 U.S.C. § 1002(7) since October 1, 2004.

20. Mr. Cajina devoted twenty-one years of service to Meadowvale and was instrumental in growing the company from a modest operation to an enterprise generating over $100 million in annual revenue.

21. Mr. Cajina's ESOP account is fully vested, and he is eligible to receive distributions from the Meadowvale ESOP as of the 2025 Plan Year.

22. Meadowvale Inc. ("Meadowvale"), founded in 1967, is an employee-owned company that manufactures dairy dessert mixes for retailers across the United States. Its headquarters are located at 1305 E 6th Street, Sandwich, Illinois, 60548.

23. Defendant Joseph G. Gomoll is a resident of the State of Illinois and current Chief Executive Officer ("CEO") and former General Manager of Meadowvale. He had been employed by Meadowvale since August 2018, and has been CEO since January 2024.

24. Defendant Steven P. Steinwart is a resident of the State of Illinois and is current Chairman of Meadowvale's Board of Directors, and former President of Meadowvale. He resigned as the President of Meadowvale on December 31, 2023.

25. Mr. Steinwart's ESOP account is fully vested, and he was eligible to receive distributions from the Meadowvale ESOP as of the 2024 Plan Year.

26. Amy Collins is Meadowvale's current Chief Financial Officer ("CFO"), a member of the ESOP Plan Committee, and has been employed by Meadowvale in various capacities since September 1993.

27. Defendant QHI, LLC ("QHI"), which was initially organized as an LLC on March 22, 2016 by Mr. Steinwart, is an Illinois LLC that holds real estate and equipment for

Meadowvale, Inc., and has the same address as Meadowvale at 1305 E 6th Street, Sandwich, Illinois, 60548.

28.     Joseph G. Gomoll is currently listed as QHI's registered agent, and Meadowvale, Inc., is listed as its current registered Manager.

29.     Prior to February 5, 2025, Steven P. Steinwart was listed as the registered agent for QHI.

30.     QHI was dissolved on September 13, 2019, and reinstated as an Illinois LLC on October 29, 2021, by Mr. Steinwart.

31.     QHI is a holding company that Mr. Steinwart formed as Meadowvale President in 2016 to hold Meadowvale building, land, and equipment assets.

32.     The Department of Labor ("DOL") 5500 Forms for the Meadowvale ESOP do not list QHI assets as Plan "specific assets" (i.e., employer real property, real estate, and tangible personal property) of the Plan for purposes of valuing the ESOP shares.

33.     The 5500 Plan Forms from 2019 through 2024 state that there were between 29 and 37 Meadowvale Plan participants, and assets between $7,633,900 and $36,898,167.

34.     Meadowvale sponsored the Meadowvale ESOP under 29 U.S.C. § 1002(16)(B).

35.     The ESOP Plan Committee is named in the Meadowvale ESOP Plan as the Plan Administrator within the meaning of 29 U.S.C. § 1002(16)(A), a named fiduciary of the Meadowvale ESOP within the meaning of 29 U.S.C. § 1102, and the trustee of the Meadowvale ESOP.

36.     Mr. Gomoll is a fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) of the Meadowvale ESOP as the Chair of the ESOP Plan Committee, because he exercises discretionary authority and discretionary control respecting management of the Meadowvale ESOP, and/or has discretionary authority or discretionary responsibility in the administration of the Meadowvale ESOP.

37.     Mr. Steinwart, Meadowvale's current Chairman of the Board of Directors and former President, is a fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) of the

Meadowvale ESOP, because he exercises discretionary authority and discretionary control respecting management of the Meadowvale ESOP, and/or has discretionary authority or discretionary responsibility in the administration of the Meadowvale ESOP.

38. Plaintiffs have Article III standing to bring this action because they suffered actual injuries to their ESOP Plan accounts by Mr. Steinwart receiving special treatment because that special treatment was retroactive and financially prejudicial to Plaintiffs, because their ESOP shares have been undervalued based on the undisclosed relationship between Meadowvale and QHI, and because they have been exposed to substantial tax penalties based on the Meadowvale ESOP being operated violation of top heavy and nondiscrimination tax qualification rules.

39. Those injuries are fairly traceable to Mr. Gomoll and the ESOP Plan Committee disloyally, imprudently, and in a prohibited self-dealing manner, using the Plan's assets to favor Mr. Gomoll and Mr. Steinwart at the expense of other Meadowvale ESOP participants.

40. These injuries diminished the savings in Plaintiffs' ESOP accounts and reduced, dollar for dollar (and more when compounded) Plaintiffs' retirement savings.

41. Having established Article III standing, Plaintiffs may seek recovery under 29 U.S.C. § 1132(a)(2) and (a)(3), on behalf of the Plan and for relief that sweeps beyond their own injuries.

42. The Plaintiffs and all participants in the Meadowvale ESOP did not have knowledge of any of the material facts (including, among other things, the special lump-sum distribution treatment provided to Mr. Steinwart, the existence of the self-dealing between Meadowvale and QHI, and the current tax qualification issues) necessary to understand that Defendants breached their fiduciary duties and engaged in prohibited transactions, until shortly before this suit was filed.

## EXHAUSTION OF ADMINISTRATIVE CLAIMS

43. On June 6, 2025, Mr. Leslie sent Mr. Gomoll, in his capacity as the Meadowvale ESOP Administrator, an administrative claim under ERISA Section 503, requesting that he be

given the same lump treatment as Mr. Steinwart with regard to his lump sum distribution of his ESOP shares.

44.     On June 16, 2025, Mr. Gomoll, in his capacity as the Meadowvale ESOP Administrator, denied Mr. Leslie's claim for a lump sum distribution, similar to that of Mr. Steinwart.

45.     On June 20, 2025, Mr. Leslie formally appealed Meadowvale's denial of his claim for lump sum benefits under the Plan, expanding his claims to include his fiduciary and prohibited transaction claims that his ESOP shares were undervalued because of the undisclosed relationship between QHI and Meadowvale and the failure to include QHI assets in the Plan; and the fact the Plans qualified status may be in jeopardy because of the top-heavy nature of the Meadowvale ESOP and its violation of non-discrimination rules, exposing Plan participants to substantial tax penalties.

46.     On July 7, 2025, Mr. Gomoll denied Mr. Leslie's appeal of his right to lump sum benefits, and otherwise did not address the other fiduciary and prohibited transaction claims involving the valuation of ESOP shares and the Plan's qualification status. Mr. Leslie's administrative claims under the Meadowvale ESOP have therefore been exhausted.

47.     On August 1, 2025, Mr. Leslie informed Mr. Gomoll that he did not wish to elect to receive his first installment of his Meadowvale ESOP distribution because of his right to a lump-sum benefit, and has, in fact, not started to receive any ESOP distributions.

48.     On August 27, 2025, Mr. Cajina sent Mr. Gomoll, in his capacity as the Meadowvale ESOP Administrator, an administrative claim under ERISA Section 503, requesting that he be given the same lump treatment as Mr. Steinwart with regard to his distribution of his ESOP shares.

49.     On September 24, 2025, Mr. Gomoll, in his capacity as the Meadowvale ESOP Administrator, denied Mr. Cajina's claim for a lump sum distribution, similar to that of Mr. Steinwart.

8

50. Also on September 24, 2025, Mr. Gomoll informed Mr. Cajina that because Mr. Cajina had elected to start receiving his first installment of his Meadowvale ESOP distribution that he would receive his first installment of the distribution in September 2025.

51. On September 26, 2025, Mr. Cajina formally appealed Meadowvale's denial of his claim for lump sum benefits under the Plan, expanding his claims to include his fiduciary and prohibited transaction claims that his ESOP shares were undervalued because of the undisclosed relationship between QHI and Meadowvale and the failure to include QHI assets in the Plan; and the fact the Plans qualified status may be in jeopardy because of the top-heavy nature of the Meadowvale ESOP and its violation of non-discrimination rules, exposing Plan participants to substantial tax penalties.

52. Also on September 26, 2025, Mr. Cajina notified Mr. Gomoll that although he had received the first installment of his ESOP distribution, this fact in no way should be construed to waive his argument that he believe he should have been paid the full lump sum instead of that single installment and that he desire no further installment of his ESOP benefits.

53. On November 4, 2025 (though not received until November 11, 2025), Mr. Gomoll denied Mr. Cajina's appeal of his right to lump sum benefits, and otherwise did not address the other fiduciary and prohibited transaction claims involving the valuation of ESOP shares and the Plan's qualification status. Mr. Cajina's administrative claims under the Meadowvale ESOP have therefore been exhausted.

<strong><u>FACTUAL ALLEGATIONS</u></strong>

<strong><u>DISCRIMINATORY SEVENTH AMENDMENT TO MEADOWVALE ESOP</u></strong>

54. The Meadowvale, Inc. Employee Stock Ownership Plan was last amended and restated effective January 1, 2014 ("ESOP Plan Document").

55. Under Section 11.2(d) of the ESOP Plan Document:

> (d) If the amount of the Participant's nonforfeitable Account balances exceeds $500,000, then payment of his nonforfeitable Account balances shall be made in substantially equal annual installments over a period of five (5) years, plus one (1) year for each $195,000 (subject to annual cost-

9

of living adjustments) (or fraction thereof) by which the nonforfeitable Account balances exceed $985,000 (subject to annual cost-of-living adjustments) commencing during any Distribution Period beginning after his Termination Date, as elected by the Participant.

56. As of December 31, 2024, Mr. Leslie had an ESOP account balance of $7,359,446.49, based on his having been awarded 1,421.1047 ESOP shares appraised at $5,178.68 each.

57. Because his account balance exceeded $985,000, Mr. Leslie was required to take his account in substantially equal annual installments over a period of ten (10) years.

58. As of December 31, 2024, Mr. Cajina had an ESOP account balance of $1,594,451.36, based on his having been awarded 307.8876 ESOP shares appraised at $5,178.68 each.

59. Because his account balance exceeded $985,000, Mr. Cajina was required to take his account in substantially equal annual installments over a period of six (6) years.

60. As the second largest shareholder after Mr. Leslie, Mr. Steinwart would have also been required to take his account in substantially equal annual installments over a period of ten (10) years.

61. However, on August 30, 2024, under the Seventh Amendment to the Plan Document, Mr. Gomoll, in his capacity as Meadowvale CEO, signed off on a *retroactive* amendment to Sections 11.2 and 11.3 of the Meadowvale ESOP to permit participants who terminated employment with the Company on or before December 31, 2023, to make a one-time election during the 2024 Plan Year to have their vested Account balances distributed to them in one lump-sum.

62. No explanation of the purpose behind the Seventh Amendment to the Plan has ever been provided by any of the Defendants to Plaintiffs.

63. Although this Seventh Amendment applied to two other Meadowvale rank-and-file employees with very few ESOP shares, the Seventh Amendment was enacted with the intent to primarily benefit Mr. Steinwart, who resigned as President on December 31, 2023, and

therefore, could make a one-time election during the 2024 Plan Year to have his ESOP account balanced distributed to him in one lump-sum payment rather than over ten years.

64. Mr. Steinwart, in fact, made the election to receive a single lump-sum payout during the 2024 Plan Year and had his vested account balance in the Meadowvale ESOP distributed to him in one lump-sum, which otherwise would have been provided to him over a ten-year period.

65. By receiving a one-time lump sum payment as opposed to receiving his distribution in installments of ten years, Mr. Steinwart had the advantage of immediately using his entire ESOP distribution as he wished immediately and he did not have to risk the ESOP shares being devalued on a year-to-year basis.

66. Because Mr. Gomoll and the ESOP Plan Committee withdrew such a large amount of funds from the Meadowvale ESOP for Mr. Steinwart's distribution, Mr. Gomoll alerted employees in the Spring of 2025 that the value of the remaining ESOP shares would likely not be valued as highly, meaning other Meadowvale ESOP participants suffered financial losses as result of the lump sum payout to Mr. Steinwart.

67. Mr. Leslie and Mr. Cajina, who both left employment at Meadowvale in 2024, were ineligible to receive their distributions through a one-time election of a lump-sum payment under the Seventh Amendment like Mr. Steinwart because their terminations occurred after December 31, 2023.

68. In fact, Mr. Leslie, the largest ESOP shareholder, had the terms of his distribution payout from the Meadowvale ESOP extended from a 5-year payout to a 10-year payout.

69. Mr. Cajina had the terms of his distribution payout from the Meadowvale ESOP changed from a 5-year payout to a 6-year payout.

**NON-DISCLOSURE OF RELATIONSHIP BETWEEN MEADOWVALE AND QHI**

70. Meadowvale paid rental payments to QHI of approximately of $55,000 per month during parts of the Class Period.

11

71. Ms. Collins, as CFO of Meadowvale, informed Mr. Leslie before his termination in June 2024 that the Meadowvale building and land were paid for in full.

72. Mr. Gomoll informed Mr. Leslie that Meadowvale would be debt-free in three years in or around 2022 or 2023.

73. Under Schedule I on Plan Form 5500 from 2019 to 2024, QHI was never listed as a "specific asset" of the Plan as far as real or personal property that the Meadowvale ESOP owned, and thus the ESOP valuation did not include the assets that QHI held.

74. As a result, monies that should have been included in the Meadowvale ESOP were siphoned out of the ESOP and into QHI, in its capacity as Meadowvale's "landlord."

75. If QHI's relationship with Meadowvale had been transparently disclosed on the Plan's 5500 Forms and properly held as an asset within the Meadowvale ESOP, then the value of the ESOP shares would have increased for Plaintiffs and the other members of the Class.

76. Most of the Meadowvale ESOP participants are unaware of QHI's existence and were thus unaware that Mr. Gomoll and Mr. Steinwart have used, and continue to use, QHI to enrich Meadowvale and themselves at the expense of other Meadowvale ESOP participants.

## TAX QUALIFICATION ISSUES

77. As part of a broader unlawful and discriminatory scheme, Defendants have consistently failed to comply with top-heavy and non-discrimination tax qualification requirements with regard to the Meadowvale ESOP.

78. More specifically, and as alleged in both Mr. Leslie and Mr. Cajina's administrative claims, the Meadowvale ESOP's qualified status is in jeopardy, risking substantial tax penalties for Mr. Leslie, Mr. Cajina, and other Plan participants.

79. In particular, the top heavy nature of the Meadowvale ESOP violates IRC top heavy rules involving providing more than 60% of the Plan's benefits to key employees and violates IRC non-discrimination rules by providing more than 70% of the Plan's benefits to highly-compensated employees ("HCEs").

80. Defendants are therefore imprudently operating the Meadowvale ESOP in violation of such top heavy and nondiscrimination principles.

81. Operating an ERISA retirement plan in violation of tax qualification rules, subjects Mr. Leslie, Mr. Cajina, and other Plan participants to substantial tax penalties.

## ERISA VIOLATIONS

## DEFENDANTS' FIDUCIARY BREACHES OF LOYALTY AND PRUDENCE

82. ERISA imposes strict duties with regard to the fiduciary duties in operating retirement plans, like the Meadowvale ESOP, and these fiduciary duties are "the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

83. To succeed on a claim for breach of fiduciary duty under ERISA Section 404(a), 29 U.S.C. § 1104(a), Plaintiffs must prove that (1) Defendants acted as fiduciaries in their actions involving the Meadowvale ESOP; (2) Defendants breached their fiduciary duties; and (3) those breaches proximately caused a loss to Plaintiffs and Class members.

84. With regard to the first element, Defendants, including Mr. Gomoll, Mr. Steinwart, and the ESOP Plan Committee, are, or have been, ERISA fiduciaries as they exercised discretionary oversight, authority, and/or control, over the Meadowvale ESOP.

85. The ESOP Plan Committee, with Mr. Gomoll as its Chair, is named as the plan administrator in the Meadowvale ESOP Document and is responsible for the management and administration of the Meadowvale ESOP. See 29 U.S.C. § 1002(16)(A)(i), (21)(A)(iii).

13

86. With regard to the second element regarding breach of fiduciary duty, ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; [and] (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of like character and with like aims." ERISA § 404(a)(1)(A), (B), 29 U.S.C. § 1104(a)(1)(A), (B).

87. Defendants breached their fiduciary duties of prudence and loyalty in at least three ways: (1) by giving special treatment to Mr. Steinwart retroactively with regard to distribution options which financially prejudiced other Meadowvale ESOP participants; (2) by undervaluing the Meadowvale ESOP shares by failing to list the assets of QHI, Inc., primarily operated by Mr. Steinwart and Mr. Gomoll, as part of the Meadowvale ESOP; and (3) by operating the Meadowvale Plan in violation of IRC top heavy and non-discrimination rules, exposing Plaintiffs and Class members to substantial tax penalties with regard to their retirement benefits.

88. More specifically, fiduciaries of an ESOP must act solely in the interest of participants and beneficiaries.

89. Affording special treatment to one participant (like Mr. Steinwart) is a breach of that duty because that special treatment was retroactive and financially prejudicial to other Meadowvale ESOP participants.

90. Under ERISA, benefits must be administered in a nondiscriminatory manner and ERISA fiduciaries must avoid conflicts of interest and act in the sole interest of participants.

91.     A retroactive amendment that selectively benefits an insider like former President and current Chairman of the Board Steinwart constitutes self-dealing and impermissible discrimination because such actions disadvantage others Meadowvale ESOP participants, like Mr. Leslie and Mr. Cajina, under materially similar circumstances.

92.     While plan sponsors can amend plans in their settlor capacity, retroactive changes that impact vested rights or that are applied discriminatorily violate Mr. Gomoll's and the ESOP Plan Committees' fiduciary duties of loyalty and prudence to Plaintiffs and Class members.

93.     A change in a Plan distribution policy that benefits select individuals constitute a breach of fiduciary duty under ERISA.

94.     By providing Mr. Steinwart with favorable distribution treatment, Mr. Gomoll and the ESOP Committee violated their duty of loyalty to act in the interests of all Plan participants and violated their duty of prudence by acting in an unreasonable manner favoring Mr. Steinwart over all other Meadowvale participants, including over long-time employees, Mr. Leslie and Mr. Cajina.

95.     To correct this imbalance of treatment, Mr. Leslie, Mr. Cajina, and the other similarly-situated Class Members, demand that the Plan Committee permit them to also elect a one-time distribution and have their vested account balance in the Meadowvale ESOP distributed to them in one lump-sum.

96.     Additionally, Plaintiffs seek to invalidate the Seventh Amendment to the Plan as discriminatory and require that Mr. Steinwart's lump-sum distribution be clawed-back, that Mr. Steinwart be subject to the same 10-year ESOP payout as Mr. Leslie, that the ESOP shares be re-

valued with Mr. Steinwart's funds refunded to the Meadowvale ESOP, and that the current fiduciaries, including Mr. Gomoll and Mr. Steinwart, be removed.

97. With regard to third element of the fiduciary breach claims, these fiduciary breaches have cause or will cause substantial financial losses to Mr. Leslie, Mr. Cajina and other Class members because (1) receiving their distribution over an extended period of time subject their ESOP shares to the risk of devaluation and eliminates their ability to use those funds as desired; (2) undervalues their ESOP shares by failing to take into account the assets of QHI; and (3) exposes them to substantial tax penalties for failing to run the Meadowvale ESOP in a manner consistent with IRC top-heavy and non-discrimination rules.

98. Plaintiffs therefore seek equitable relief in the form of surcharge, reformation, estoppel, declaratory relief, and injunctions to enforce their rights under the Meadowvale ESOP for these multiple and significant fiduciary breaches by Defendants with regard to their operation and management of the Meadowvale ESOP. *See CIGNA Corp. v. Amara*, 563 U.S. 421 (2011).

99. Plaintiff also seek a full plan accounting for the Meadowvale ESOP because of the discriminatory distribution treatment provided to Mr. Steinwart, the undervaluing of ESOP shares based on the exclusion of QHI assets from the Plan, and their exposure to tax penalties because of qualification issues with the Meadowvale ESOP.

100. A year-by-year audit of contributions and earnings is also necessary to determine the correct amounts owed to Plaintiffs and Class Members and to maintain Meadowvale ESOP's tax qualification status.

## PROHIBITED TRANSACTION VIOLATIONS

101. Defendants also violated both party-in-interest prohibited transaction and fiduciary prohibited transaction rules as parties-in-interest and fiduciaries dealing with the assets of the Meadowvale ESOP for their own benefit and for their own account. Such self-dealing

establishes liability under ERISA Sections 406(a)(1), (C), (D), 406(b), 29 U.S.C. § 1106(a)(1)(C), (D), 1106(b)

102. Meadowvale is a party-in-interest under ERISA because it is an employer "any of whose employees are covered by [the Meadowvale ESOP]." 29 U.S.C § 1002(14)(C).

103. QHI is a party-in-interest under ERISA because it "provid[es] services to [the Meadowvale ESOP]." 29 U.S.C § 1002(14)(B).

104. Mr. Gomoll and Mr. Steinwart are parties-in-interest under ERISA because they are Plan "fiduciar[ies] (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan," 29 U.S.C § 1002(14)(A), and "an employee, officer, director (or an individual having powers or responsibilities similar to those of officers or directors), . . . of the employee benefit plan." 29 U.S.C § 1002(14)(H).

105. Defendants Meadowvale, Plan Committee, Gomoll, and Steinwart, are also fiduciaries of the Meadowvale ESOP for the reasons alleged above.

106. During the relevant period, Defendants, as both parties-in interest and as fiduciaries, improperly used Meadowvale ESOP assets for their own benefit and for their own account to enrich themselves at the expense of the other Meadowvale ESOP participants.

107. Defendants, as fiduciaries with the respect to the Meadowvale ESOP, caused the Plan to engage in leasing of property between the Plan and QHI, a party-in-interest, and caused the furnishing of facilities between the Plan and QHI, thereby engaging in prohibited transactions under ERISA § 406(a)(1)(A) and (C), 29 U.S.C. § 1106(a)(1)(A), (C).

108. The special Meadowvale ESOP distribution treatment for Mr. Steinwart, the exclusion of QHI assets from the Meadowvale ESOP, and the exposure to substantial tax penalties based on qualification issues with the Meadowvale ESOP, all constitute "direct and indirect transfers to, use by, and for the benefit of, a party in interest [i.e., Meadowvale, Mr. Gomoll, and Mr. Steinwart] of Meadowvale ESOP assets in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

17

109. Defendants, as fiduciaries to the Meadowvale ESOP, also engaged in self-dealing by using Meadowvale ESOP assets for their own account, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), by providing special Meadowvale ESOP distribution treatment for Mr. Steinwart, by excluding QHI assets from the Meadowvale ESOP, and by exposing Plan participants to substantial tax penalties based on qualification issues with the Meadowvale ESOP.

110. Plaintiffs therefore seek equitable relief in the form of surcharge, reformation, estoppel, declaratory relief, and injunctions, to enforce their rights under the Meadowvale ESOP for these multiple and significant prohibited transactions by Defendants with regard to their operation and management of the Meadowvale ESOP. *See CIGNA Corp. v. Amara*, 563 U.S. 421 (2011).

## CLASS ACTION ALLEGATIONS

111. Plaintiffs brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

112. The proposed class is defined as:

All current and former participants of the Meadowvale Amended and Restated Employee Stock Ownership Plan, and their beneficiaries, who have undistributed Meadowvale ESOP benefits.

113. Defendants are excluded from the Class.

114. The Class Period runs from six years prior to filing of this lawsuit or November 17, 2019, until final judgment.

115. This action satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), and is maintainable under Rules 23(b)(1)(A) and (B), and/or 23(b)(2).

18

116. The members of the proposed Class are so numerous that joinder of all members is impracticable. The Class consists of approximately forty (40) Meadowvale ESOP participants who, like Plaintiffs, are eligible for retirement benefits under the Meadowvale ESOP but have received, or will receive, discriminatory distribution treatment, undervalued ESOP shares, and be subjected to substantial tax penalties based on Plan tax qualification issues.

117. There are questions of law and fact common to the Class, including but not limited to: (1) whether Defendants acted as fiduciaries under ERISA; (2) whether Defendants breached their fiduciary duties; (3) whether Defendants engaged in party-in-interest and fiduciary prohibited transactions under ERISA by benefitting themselves with Meadowvale ESOP assets; and (4) whether and whether Defendants' conduct warrants equitable relief under ERISA §§ 502(a)(2) and (a)(3), including surcharge, estoppel, reformation, declaratory, and other appropriate equitable and injunctive relief.

118. Plaintiffs' claims are typical of the claims of the Class. Like other members of the Class, Plaintiffs were employed by Meadowvale, were participants of the Meadowvale ESOP, and suffered, or will suffer, substantial loss to their retirement accounts as result of Defendants' Plan fiduciary misconduct.

119. Plaintiffs are adequate class representatives because they will fairly and adequately protect the interests of the Class. Plaintiffs have no conflict with other members of the Class and have retained competent counsel experienced in ERISA litigation and class actions.

120. Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants and thus, this Class is certifiable under both Rule 23(b)(1)(A) or 23(b)(1)(B).

121. Because Defendants acted or refused to act on grounds generally applicable to the Class, making declaratory and injunctive relief appropriate with respect to the Class as a whole, the Class is also certifiable under Rule 23(b)(2).

122. Mr. Leslie and Mr. Cajina have exhausted all of their administrative remedies with regard to their fiduciary and prohibited transaction claims under the Meadowvale ESOP, and those claims have  been denied as a result of the administrative process; and any further exhaustion by unnamed class members would be futile based on the denial of the named plaintiffs' claim appeals.

123. Accordingly, Plaintiffs have satisfied all conditions precedent to the filing of this action, and no further exhaustion of administrative remedies by absent class members is required.

### COUNT ONE: BREACHES OF FIDUCIARY DUTY
### (ERISA §§ 502(a)(2), (a)(3), 29 U.S.C. § 1132(a)(2), (a)(3))

124. Plaintiffs re-allege and incorporate by reference all proceeding paragraphs.

125. Defendants are fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), as they exercised discretionary authority or control over the management, administration, or operation of the Meadowvale ESOP.

126. Defendants breached their fiduciary duties of loyalty and prudence to Meadowvale ESOP participants (1) by giving special treatment to Mr. Steinwart retroactively with regard to distribution options which financially prejudiced other Meadowvale ESOP participants; (2) by undervaluing the Meadowvale ESOP shares by failing to list the assets of QHI, Inc., primarily operated by Mr. Steinwart and Mr. Gomoll, as part of the Meadowvale ESOP; and (3) by operating the Meadowvale Plan in violation of IRC top heavy and non-

discrimination rules, exposing Plaintiffs and Class members to substantial tax penalties with regard to their retirement benefits.

127. As a result of these breaches of fiduciary duty, Plaintiffs and Class members have suffered actual or imminent harm, including but not limited to, loss of Meadowvale ESOP benefits, and the increased risk of loss of retirement benefits by not receiving a lump-sum distribution of their benefits.

128. Pursuant to ERISA §§ 502(a)(2) and 502(a)(3), Plaintiffs seek appropriate equitable relief on behalf of the Plan and for their own benefit, including: (1) surcharge to compensate them for losses caused by Defendants' breach of duty; (2) declaratory relief clarifying their rights under the Meadowvale ESOP; (3) reformation of the Meadowvale ESOP to claw back the lump sum distribution to Mr. Steinwart; (4) equitable estoppel to prevent Defendants from asserting defenses based on Plaintiffs' lack of knowledge; and (5) any other relief deemed just and proper by the Court.

## COUNT TWO: PROHIBITED TRANSACTIONS
### ERISA §§ 406(a)(1)(C), (D), 406(b), 29 U.S.C. § 1106(a)(1)(C), (D), 406(b)

129. Plaintiffs re-allege and incorporate by reference all proceeding paragraphs.

130. The Meadowvale ESOP is an employee pension benefit plan governed by ERISA, established and maintained by Defendants, who also serves as the Plan Sponsor. The ESOP Plan Committee is the Plan Administrator.

131. Meadowvale is a party-in-interest under ERISA because it is an employer "any of whose employees are covered by [the Meadowvale ESOP]." 29 U.S.C § 1002(14)(C).

132. QHI is a party-in-interest under ERISA because it "provid[es] services to [the Meadowvale ESOP]." 29 U.S.C § 1002(14)(B).

133. Mr. Gomoll and Mr. Steinwart are parties-in-interest under ERISA because they are Plan "fiduciar[ies] (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan," 29 U.S.C § 1002(14)(A), and "an employee, officer, director (or an individual having powers or responsibilities similar to those of officers or directors), . . . of the employee benefit plan." 29 U.S.C § 1002(14)(H).

134. Defendants, as fiduciaries with the respect to the Meadowvale ESOP, caused the Plan to engage in leasing of property between the Plan and QHI, a party-in-interest, and caused the furnishing of facilities between the Plan and QHI, thereby engaging in prohibited transactions under ERISA § 406(a)(1)(A) and (C), 29 U.S.C. § 1106(a)(1)(A), (C).

135. ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits a plan fiduciary from causing the plan to engage in a transaction with a party in interest if such transaction involves, in pertinent part, the transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan, including an employer or employees like Defendants.

136. Defendants, as Meadowvale ESOP parties-in-interest, improperly benefitted from the assets of Meadowvale ESOP by providing special Meadowvale ESOP distribution treatment for Mr. Steinwart, by excluding QHI assets from the Meadowvale ESOP, and by operating the Meadowvale ESOP in a manner that enriched them as key employees and highly-compensated employees, even though that Plan structure jeopardized the tax qualification status of the Plan and exposed Plaintiffs and other Class Members to substantial tax penalties.

137. ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), provides that a fiduciary shall not deal with the assets of the plan in his own interest or for his own account.

138. Defendants, as Meadowvale ESOP fiduciaries, violated § 406(b)(1) by knowingly using Plan assets in transactions that served their own personal financial interests, including by providing special Meadowvale ESOP distribution treatment for Mr. Steinwart, by excluding QHI assets from the Meadowvale ESOP, and by operating the Meadowvale ESOP in a manner that enriched them as key employees and highly-compensated employees, even though that Plan

22

structure jeopardized the tax qualification status of the Plan and exposed Plaintiffs and other Class Members to substantial tax penalties.

139. Pursuant to ERISA §§ 502(a)(2), (a)(3), 29 U.S.C. § 1132(a)(2), (a)(3), Plaintiffs seeks appropriate relief on behalf of the Plan, including: (a) restoration of all losses to the Plan resulting from the Defendant's violations; (b) disgorgement of any profits or benefits derived by Defendants from the improper use of Plan assets; and (c) any other legal or equitable relief the Court deems just and proper.

WHEREFORE, Plaintiffs pray that judgment be entered and requests the following relief:

A. A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative Rule 23(b)(2), of the Federal Rules of Civil Procedure;

B. Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

C. A Declaration that Defendants are fiduciaries of the Meadowvale ESOP, breached their fiduciary duties of loyalty and prudence to Meadowvale ESOP participants, and engaged in both fiduciary and party-in-interest prohibited transactions, causing substantial financial harm to the Meadowvale ESOP participants and beneficiaries;

D. An Order compelling Defendants to make good to Plaintiffs and Class members all losses to the Meadowvale ESOP resulting from Defendants' fiduciary breaches and prohibited transactions, including restoring to Plaintiffs and Class members all retirement plan losses caused by Defendants' fiduciary breaches and prohibited transactions;

E. An Order requiring Defendants to disgorge all profits received from, or in respect of, the Meadowvale ESOP, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of constructive trust, or surcharge against Defendants as necessary to effectuate relief, and to prevent Defendants' unjust enrichment;

F. An Order enjoining Defendants from any further prohibited transactions or violations of their ERISA fiduciary responsibilities, obligations, and duties, with regard to the Meadowvale ESOP;

G.      An Order imposing an award of pre-judgment interest;

H.      An Order imposing an award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

I.      Such other and further relief as the Court deems equitable and just.


Date:  November 17, 2025                    Respectfully submitted,

                                           /s *Paul M. Secunda*
                                           Paul M. Secunda
                                           WALCHESKE & LUZI, LLC
                                           125 S. Wacker Dr., Suite 300
                                           Chicago, Illinois 60606
                                           T-224-698-2630
                                           F-(262) 565-6469
                                           E-Mail - psecunda@walcheskeluzi.com

                                           Mark D. DeBofsky
                                           DEBOFSKY LAW, LTD.
                                           2 N. Riverside Plaza, Suite 1420
                                           Chicago, Illinois 60606
                                           T-(312) 561-4040
                                           F-(312) 600-4426
                                           Email – mdebofsky@debofsky.com

                                           *Counsel for Plaintiffs and Proposed Class*

24