**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Jason Leslie and Eduardo Cajina, Individually, and as Representatives of a Class of Participants and Beneficiaries of the Meadowvale, Inc. Amended and Restated Employee Stock Ownership Plan, | ) ) ) ) ) | Case No. 1:25-cv-14040 |
| | ) | Judge Jeremy C. Daniel |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| Meadowvale, Inc., ESOP Committee of Meadowvale, Inc., Joseph G. Gomoll, Steven P. Steinwart, and QHI, LLC, | ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULES 12(b)(1) AND 12(b)(6)**

Michael L. Scheier
Jacob D. Rhode
Omar S. Khoury
Keating Muething & Klekamp PLL
1 E. 4th Street, Suite 1400
Cincinnati, OH 45202
Tel: (513) 579-6400
mscheier@kmklaw.com
jrhode@kmklaw.com
okhoury@kmklaw.com

*Attorneys for All Defendants*

Lee T. Polk
Jordan D. Mamorsky
The Wagner Law Group
150 S. Wacker Dr., Suite 2400
Chicago, IL 60606
Tel: (847) 250-1367
LPolk@wagnerlawgroup.com
JMamorsky@wagnerlawgroup.com

*Attorneys for Defendants Meadowvale, Inc.,*
*ESOP Committee of Meadowvale, Inc.,*
*Joseph G. Gomoll, and QHI, LLC*

Plaintiffs' Response does not cure the fundamental defects of their Complaint. As explained below, dismissal with prejudice is appropriate.

## I.     Argument

### A.  Rule 12(b)(1) - Plaintiffs Lack Article III Standing.

Plaintiffs purportedly assert "three independent sources of injury" to support their Article III standing. Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss ("Opp.") at 8, ECF No. 28. All fail.

*First*, Plaintiffs contend that Amendment No. 7 "enabled a substantial insider withdrawal of Plan assets which resulted in Defendant Gomoll warning employees that . . . the value of remaining [ESOP] shares would likely decline." *Id*. Plaintiffs proclaim that the extension of their payout periods "forced" them "to incur ongoing valuation risk while [Defendant Steinwart] obtained immediate liquidity." *Id*. This is not an Article III injury; it is conjecture about possible future harm. As referenced in Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss, ECF No. 25 (the "MOL" at 6), the Seventh Circuit is clear that "a risk of future harm, without more, is insufficiently concrete to permit standing to sue for damages in federal court." *Ewing v. Med-1 Sols., LLC*, 24 F.4th 1146, 1152 (7th Cir. 2022) (citation omitted). And here, it is just as likely that Meadowvale share value will *increase*, thereby *benefitting* Plaintiffs. *See, e.g., Matter of 203 N. LaSalle St. P'ship*, 190 B.R. 595, 598 (N.D. Ill. 1995) ("Furthermore, [a party's] fear that the value of its collateral will decrease is speculative—it may increase or it may decrease."). Plaintiffs failed to respond to this point in their opposition. Plaintiffs' reference to Mr. Gomoll's alleged statement does not demonstrate a concrete injury to raise Plaintiffs' alleged injury "above the speculative level." *Daly v. W. Monroe Partners, Inc.*, No. 21 C 6805, 2023 WL 2525362, at *6 (N.D. Ill. Mar. 15, 2023) (cleaned up).

For both procedural and substantive reasons, it also does not help Plaintiffs to argue for the first time in the opposition brief that "removing a substantial block of assets . . . alters both the

value of the remaining plan assets and the financial risk borne by remaining participants" because that is not asserted in the Complaint. Opp. at 8. Procedurally, it is well-established in the Seventh Circuit that "[a] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion to dismiss." *Muhammad v. Rivera*, No. 1:22-CV-1028, 2022 WL 18780656, at *5 (C.D. Ill. July 1, 2022) (cleaned up) (quoting *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)). That is precisely what Plaintiffs are trying to do with this argument.

That procedural flaw aside, this argument substantively ignores the Plan's express terms. As noted in the MOL at 5, Plan section 7.02 and ERISA require a new fair market value ("FMV") analysis of Meadowvale stock in participant accounts every year. *See* Plan, § 7.2; ERISA § 3(18), 29 U.S.C. § 1002(18). As such, the amount of the annual installment benefit is tied to fluctuation in the annual valuation of Meadowvale stock, and is therefore inherently speculative. Plaintiffs fail to respond to this argument. Moreover, Plaintiffs' theory of injury presupposes that the removal of *any* assets from the Plan necessarily diminishes the value of remaining participants' accounts or increases the financial risk they bear. But the annual valuation ensures that each Plan participant's account balance is adjusted periodically to correspond to FMV rather than being tethered to some static or historical share valuation that could be impacted by cash or stock movements in or out of the Plan.[1]

---

[1] Moreover, valuation of private company stock like Meadowvale's is a complex undertaking requiring a plan trustee to engage professionals trained in valuation methodologies. There are many dozens of factors that impact the annual FMV of private company stock one way or the other in addition to the influx or removal of plan assets. Examples are changes in revenue, fixed expenses, stock repurchase obligations, cash on hand, interest bearing debt, phantom stock adjustments and subjective factors like application of a discount for lack of marketability, and company specific risk premium, etc. *See, e.g.*, *Fish v. GreatBanc Tr. Co.*, No. 09 C 1668, 2016 WL 5923448, at *61–63 (N.D. Ill. Sept. 1, 2016) (discussing myriad factors). To argue that the lump sum distribution isolated from any of these other valuation factors caused injury does not constitute a plausible allegation of concrete loss.

Ultimately, the most Plaintiffs can muster is allegations about *potential* future "valuation *risk*." Opp. at 8 (emphasis added). But such potential future risk is different from actually suffering a loss, as required under *Ewing* and all of the other case law cited in Defendants' MOL.

**Second**, Plaintiffs' allegation that "related-party rent payments [to QHI] siphoned value to insiders and that assets associated with those payments were excluded from ESOP valuation" is insufficient to confer standing. *Id*. at 9. Plaintiffs allege that the rent payments were from Meadowvale to QHI. Compl. ¶¶ 5, 70; Opp. at 3. There is no allegation that the rent payments were made with cash or cash equivalents taken from the ESOP. Nor do Plaintiffs address the uncontested law cited in the MOL that the ESOP has no interest in or claim on corporate assets like the cash used to make the rent payments where the plan sponsor, like Meadowvale, is an operating company. MOL at 9; *see* 29 CFR 2510.3-101(a)(2)(i) (benefits plan has no interest in underlying assets of plan sponsor if it is, as here, an operating company); 29 CFR 2510.3-101(h)(3) (establishing corporate assets are not plan assets where plan is an ESOP).

Moreover, just alleging that Meadowvale's corporate cash was used to pay ordinary business expenses like rent to QHI is insufficient to establish injury. As discussed in Defendants' MOL, it is well settled that fiduciary liability does not arise, as a matter of law, when corporate officers and directors "conduct business unregulated by ERISA" like paying rent to an affiliate. *Armstrong v. Amsted Ind., Inc.,* No. 01 C 2963, 2004 WL 1745774 at *4 (N.D. Ill. July 30, 2004). After all, every business decision impacts the value of stock in a private corporation "and therefore the benefits that ESOP plan participants will ultimately receive" so "ERISA's fiduciary duties under § 1104 attach only to transactions that involve investing the ESOP's assets or administering the plan." *Martin v. Feilen,* 965 F.2d 660, 666 (8th Cir. 1992); *accord Johnson v. Couturier,* 572 F.3d 1067, 1077 (9th Cir. 2009).

An additional point bears mention. "Whether a plan has acquired a beneficial interest in particular funds depends on whether the plan sponsor expresses an intent or has acted or made representations sufficient to lead participants of the plan to reasonably believe that such funds are otherwise plan assets." *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 647 (8th Cir. 2007) (cleaned up). QHI is not referenced *anywhere* in the text of the Plan. *Sec'y of Lab. v. Doyle*, 675 F.3d 187, 204 (3d Cir. 2012) ("[T]he first step in identifying the property of an ERISA plan is to consult the documents establishing and governing the plan."). Nor did Plaintiffs allege that any of the Defendants had otherwise held out QHI as a Plan asset (just the opposite is the allegation).

*Third*, Plaintiffs do not directly respond to Defendants' argument that they lack standing under ERISA as a matter of law to sue for IRC violations. MOL at 10. Again, only IRC provisions specifically incorporated into ERISA may give rise to ERISA liability. *Reklau v. Merchants Nat. Corp.,* 808 F.2d 628, 630–31 (7th Cir. 1986). Yet here, Plaintiffs' ERISA allegations are premised on a violation of the IRC "top heavy" and anti-discrimination rules in Sections 401, 410(b), and 416, *see* 26 U.S.C. §§ 401, 410(b), 416, *none* of which are incorporated into ERISA. *See, e.g.,* ERISA § 3002, 29 U.S.C. § 1202 (incorporating into ERISA certain IRC provisions and related regulations). Accordingly, and as discussed in the MOL, these tax code provisions do "not apply to ERISA" and do not provide Plaintiffs with the ERISA causes of action they assert. *Dean v. Nat'l Prod. Workers Union Severance Tr. Plan*, 46 F.4th 535, 544 (7th Cir. 2022) (referencing IRC § 401(a)). *See also Trenton v. Scott Paper Co.*, 832 F.2d 806, 810 (3d Cir. 1987) ("Appellants cite no provision of ERISA indicating that the creation of a top-heavy plan [under I.R.C. § 416] violates ERISA.")

Plaintiffs' citation to *Carter v. Pension Plan of A. Finkl & Sons Co.,* 654 F.3d 719 (7th Cir. 2011) is irrelevant to the issues here. Opp. at 9–10. *Carter* does not buck *Reklau* and *Dean* and

recognize that an ERISA cause of action for alleged IRC violations generally exists. In *Carter*, plaintiffs did not sue for violations of the IRC as plaintiffs do here. Rather, they sued plan fiduciaries for *violating ERISA's* anti-cutback provision based on the sponsor's alleged termination of a defined benefit plan. *Id.* at 724–25. The Seventh Circuit affirmed summary judgment for the defense because the sponsor never terminated the plan, and therefore plaintiffs never became entitled to the replacement annuity they would have been entitled to had the plan terminated. *Id.* at 727. The only discussion of the IRC recognized that *if* a plan fails to comply *with ERISA*, it may lose its tax qualified status and impose liability on fiduciaries. *Id.* at 722. *Carter* is not authority that a sponsor's violation of the IRC gives rise to an ERISA claim. Accordingly, there is no legal authority supporting Plaintiffs' claim that an alleged violation of the IRC causes concrete harm under ERISA sections 404 or 406 at all, much less to establish Article III standing.

### B. Rule 12(b)(6) - Plaintiffs' Failure to State Plausible 404 or 406 Claims.

Aside from a lack of standing, Plaintiffs' Opposition does not provide a basis from which the Court can conclude they have alleged plausible claims for Defendants' violation of either ERISA section 404 or 406.

**Count One – ERISA section 404**. As an initial matter, Plaintiffs do not refer to any facts from which the Court may infer that Mr. Steinwart, Meadowvale or QHI are fiduciaries with respect to the wrongdoing alleged in the Complaint. *See* MOL at 14–16. Plaintiffs' reference to two paragraphs in the Complaint to defend their fiduciary allegations against these Defendants are only classic conclusory allegations that fail to satisfy Rule 8 pleading standards. Opp. at 15; *see* Compl. at ¶¶ 35, 37, 87, 126, 135; *see also McCutchan v. Coriant Operations, Inc.*, No. 20 C 561, 2021 WL 83734, at *5 (N.D. Ill. Jan. 11, 2021) ("a claim for breach of fiduciary duty under ERISA requires the plaintiff to plausibly allege that the defendant is a plan fiduciary"). For this reason, the Court should dismiss those three Defendants.

- 5 -

Otherwise, Plaintiffs premise liability under ERISA section 404 solely on the following conduct: (i) amending the ESOP to permit a lump sum benefits distribution to several departed plan participants; (ii) failing to incorporate QHI into the value of Meadowvale stock; and (iii) violating certain IRC provisions. We address each in turn.

*Plan Amendment No. 7*. With respect to Mr. Gomoll, Plaintiffs only reference settlor, non-fiduciary conduct in trying to plead his fiduciary status. Opp. at 5, 15 (alleging Mr. Gomoll "approved" Amendment No. 7). However, as discussed in the MOL, amending a plan is indisputably a settlor function that cannot give rise to fiduciary liability under ERISA section 404. MOL at 13. In other words, "[p]lan sponsors who alter the terms of a plan do not fall into the category of fiduciaries." *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). After all, "employers or other plan sponsors are generally free under ERISA, *for any reason at any time*, to adopt, modify, or terminate welfare plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) (cleaned up and emphasis added). And when employers or plan sponsors "undertake those actions, they do not act as fiduciaries . . . but are analogous to the settlors of a trust." *Spink,* 517 U.S. at 890 (citing *Johnson v. Georgia-Pac. Corp.*, 19 F.3d 1184, 1188 (7th Cir. 1994)); *see also Hughes Aircraft v. Jacobson*, 525 U.S. 432, 443 (1999) ("ERISA's fiduciary provisions are inapplicable to [Plan] amendments.")

Plaintiffs' Opposition arguments are not supported by case authority, just their say so and sophistry. They characterize Amendment No. 7 as something called "fiduciary implementation" involving "insider trading[,]" saying that Defendants (without identifying which one) "implement[ed]" it in a fiduciary manner. Opp. at 12. This portrayal, however, does not hold up to scrutiny where both the Supreme Court and Seventh Circuit have made clear that a plan sponsor's decision to amend a plan is a non-fiduciary settlor function, regardless of its motivation, its effect

on particular participants, or the identity of those who purport to benefit from it—precisely Plaintiffs' allegations. Simply put, "'decisions about the content of a plan are not themselves fiduciary acts.'" *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 917 (7th Cir. 2013) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). Thus, Plaintiffs' claims that the implementation of Amendment No. 7 constituted a fiduciary breach are directly foreclosed by precedent holding that, without exception, plan amendment is not a fiduciary act.

In that regard, Plaintiffs' passing references to "implement[ing]" a plan amendment does not save their section 404 claim. *Id*. at 22. Plaintiffs never explain what additional meaning, or distinction, there is between "adopting" and "implementing" a plan amendment, or how the insertion of the word "implement" in an opposition brief could somehow transform a settlor action into a fiduciary act in contravention to Seventh Circuit precedent (it cannot). Moreover, the Fifth Circuit has persuasively rejected just this point in holding that "implementation" of a plan amendment by paying certain annuities to participants "is a settlor function, permitted under ERISA, or, alternatively, that such transactions are not subject to fiduciary duty requirements." *Lee v. Verizon Comm., Inc.*, 837 F.3d 523, 538 (5th Cir. 2016). Otherwise, plaintiffs could too easily eviscerate the Supreme Court mandated protections afforded settlor functions through such an end run claiming they are challenging, not the amendment, but its "implementation."

To be sure, Plaintiffs' own allegations also foreclose any section 404 claim based on Amendment No. 7. Again, they repeatedly defend their fiduciary allegations on the basis that Defendants on the whole or Mr. Gomoll in particular "approved" the Amendment No. 7 "acting in his capacity as Meadowvale CEO"—*i.e.*, in a corporate, non-ERISA capacity. Opp. at 2, 5, 8, 10, 11, 15. These admissions support Defendants' arguments in their MOL that Plaintiffs cannot establish fiduciary status under ERISA. Moreover, contrary to their irrelevant assertions of insider

- 7 -

favoritism, Plaintiffs admit that that Amendment No. 7 was offered to *other* participants in addition to Mr. Steinwart. *Id*. at 5.

*QHI and IRC-related allegations against all Defendants.* Plaintiffs argue that their claims regarding the QHI rent payments establish a breach of fiduciary duty. Opp. at 17. However, Plaintiffs continue to fail to state a claim for breach of fiduciary duty against any Defendant based on either QHI's asset value, or rent payments Meadowvale made to it, for the same reasons they lack Article III standing—namely, because QHI assets are corporate assets to which no fiduciary obligation attaches, not plan assets. *See supra* section I.A. (citing, among other authorities, 29 CFR 2510.3-101(a)(2)(i) and *Amsted Indus., Inc.,* 2004 WL 1745774 at *4). The same is true with regard to alleged IRC violations—the "top heavy" or anti-discrimination rules Plaintiffs rely upon do not give rise to ERISA liability. *See id.*; *Reklau*, 808 F.2d at 630–31; *Dean*, 46 F.4th at 544.

**Count Two – ERISA section 406**. Count Two alleges that "the Defendants" engaged in prohibited transactions as defined in ERISA sections 406(a)(1)(A), (C), (D) and 406(b). Compl. ¶¶ 134–35, 137. Plaintiffs' Opposition confirms these claims should be dismissed.

Start with sections 406(a)(1)(A) and (C). Both required Plaintiffs to plausibly plead that the subject transaction was between a party in interest and "the plan", here the ESOP. 29 U.S.C. § 1106(a)(1)(A), (C). The claim under these sections is premised solely on the leasing of property from QHI and furnishing of facilities to Meadowvale. Compl. ¶ 134. The fact that neither Meadowvale nor QHI are the "the plan" (i.e., the ESOP) needs no explanation. These are corporate entities. Compl. ¶¶ 22 (Meadowvale), 27 (QHI). No transaction with "the plan", no claim under section 406(a)(1)(A) or (C).

As for the section 406(a)(1)(D) claim, Plaintiffs must plead "assets of the plan" were transferred to or for the benefit of a party in interest. 29 U.S.C. § 1106(a)(1)(D). But Plaintiffs do

not, and cannot, plead that plan assets were involved in the alleged transactions at issue. Compl. ¶ 136 (setting out factual basis for claim). First, Plaintiffs' allegation that excluding QHI assets from the valuation of Meadowvale stock in the ESOP does not violate section 406(a)(1)(D) because, as noted above, QHI is not an "asset[] of the plan" as a matter of law. *See supra* Section I.A. (QHI is a Meadowvale corporate asset in which the ESOP has no interest). Indeed, Plaintiffs admit that even they "do not allege that QHI itself was a plan asset." Opp. at 23. Second, Plaintiffs' allegation that Defendants somehow caused a prohibited transaction by operating the ESOP in violation of the IRC likewise does not involve a transfer of plan assets, much less to the individuals Plaintiffs allege are parties in interest. Last, Plaintiffs assert that Amendment No. 7 constituted a "transfer" of plan assets, (Opp. at 13), but this action too, amending the ESOP, is not itself a transfer of assets—this is a corporate plan sponsor act to modify an employee benefit plan. Moreover, even if the Court were to (charitably) infer that what the Plaintiffs are really getting at is Meadowvale's redemption of Mr. Steinwart's shares (a Plan asset) with a onetime lump sum payment, that position is foreclosed by Supreme Court and Seventh Circuit authority. As the Supreme Court stated, "we thus hold that the payment of benefits pursuant to an amended plan, regardless of what the plan requires of the employee in return for those benefits, does not constitute a prohibited transaction." *Spink*, 517 U.S. at 895 (cleaned up); *see also Albert v. Oshkosh Corp.*, 47 F.4th 570, 585 (7th Cir. 2022) (payment of benefits cannot be a prohibited transaction).

Plaintiffs premise their section 406(b) prohibited transaction claim on the same allegations as the section 406(a)(1)(D) claim. Compl. ¶ 136. For the same reasons and based on the same authorities, Plaintiffs have likewise failed to state a claim under this prohibited transaction section.

## C. Impermissible Group Pleading Independently Requires Dismissal.

Plaintiffs argue that "group pleading" is permissible in ERISA cases when defendants "acted collectively in a fiduciary capacity." Opp. at 14. Plaintiffs, however, fail to grapple with the

Seventh Circuit's rule that "liability is personal," and each defendant is "entitled to know what he or she did that is asserted to be wrongful." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). Plaintiffs' Opposition does not change the fact that their allegations throughout the Complaint generally refer to "Defendants" when alleging wrongful conduct but do not identify which Defendant was acting in a fiduciary capacity in relation to which wrongful act. *See, e.g.,* Compl. ¶¶ 87, 101, 105, 107, 109, 125–26, 134, 136, 138; *see also* Opp. at 2, 8, 11, 19, 24 ("Defendants approved" Amendment No. 7). This is precisely the type of undifferentiated group pleading that the Seventh Circuit has held fails to satisfy Rule 8 notice requirements. *See Boyle v. L-3 Commc'ns Corp.*, No. 21-cv-2136, 2021 WL 4459467, at *3 (N.D. Ill. Sept. 29, 2021) (dismissing ERISA claim because "plaintiff's generic allegations asserted collectively against all of the defendants make it impossible to determine which of the defendants is being sued for what allegedly wrongful conduct under which ERISA plan") (cleaned up).

Plaintiffs' cases do not alter this conclusion. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009) is not a group pleading case so it is irrelevant. In *In re Polaroid ERISA Litigation*, the plaintiffs "separately alleged that each defendant was a Plan fiduciary who exercised discretionary authority regarding the Plan." 362 F. Supp. 2d 461, 470 (S.D.N.Y. 2005). That is much unlike here where Plaintiffs "lump the various classes of defendants into an undifferentiated mass and allege that all of them violated all of the asserted fiduciary duties." *In re Providian Fin. Corp. ERISA Litig.*, No. C 01–05027, 2002 WL 31785044, at *1 (N.D. Cal. Nov. 14, 2002).

II.     <u>Conclusion</u>

The Court should dismiss the Complaint with prejudice.

Respectfully submitted,

_s/ Michael L. Scheier_
Michael L. Scheier
Jacob D. Rhode
Omar S. Khoury
Keating Muething & Klekamp PLL
One E. 4th Street, Suite 1400
Cincinnati, OH 45202
Tel: (513) 579-6400
mscheier@kmklaw.com
jrhode@kmklaw.com
okhoury@kmklaw.com

_Attorneys for Defendants_

_s/ Lee. T. Polk_
Lee T. Polk
Jordan D. Mamorsky
The Wagner Law Group
150 S. Wacker Dr., Suite 2400
Chicago, IL 60606
Tel: (847) 250-1367
LPolk@wagnerlawgroup.com
JMamorsky@wagnerlawgroup.com

_Attorneys for Defendants Meadowvale, Inc.,_
_ESOP Committee of Meadowvale, Inc.,_
_Joseph G. Gomoll, and QHI, LLC_

15426017.v2

- 11 -